The **WISCONSIN CHEESEMAN, INC.,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 16319.

United States Court of Appeals
Seventh Circuit.

Jan. 4, 1968.

Edwin C. Pick, Ross, Stevens, Pick & Spohn, Madison, Wis., for plaintiff-appellant.

Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Lee A. Jackson, David O. Walter, Robert I. Waxman, Attys., Dept.

of Justice, Washington, D. C., Edmund A. Nix, U. S. Atty., Madison, Wis., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee, John E. Clarke, Asst. U. S. Atty., of counsel.

Before KILEY, SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This lawsuit involves the proper construction of Section 265(2) of the Internal Revenue Code.[1] The question for resolution is whether the taxpayer may deduct from its gross income the interest it paid on its mortgage and some of its short-term loans.

Taxpayer is located in Sun Prairie, Wisconsin, and is in the business of packaging fancy cheeses for sale as Christmas gifts. Its business is seasonal and is most active during the last three months of each calendar year. Its sales are solicited exclusively through a catalog mailed each October. It incurs high costs in the last three months of each calendar year. Funds are borrowed annually from September through early November to cover such costs.

During the three fiscal years ending July 31, 1960, 1961 and 1962, taxpayer obtained short-term bank loans to meet its recurring needs for working capital. These borrowings took place each fall and were repaid, from late November through January, out of the receipts of each year's sales. The balance of the receipts was used to purchase municipal bonds and treasury bills. The treasury bills were acquired with staggered maturity dates to meet the off-season needs of the business. They were reduced to cash by the middle of each July. The municipal bonds were used as collateral for the bank loans, enabling taxpayer to borrow almost 100% of their value. On August 1, 1959, taxpayer had municipal bond holdings of $138,168.29. By July 31, 1962, these holdings had increased to $218,542.70.

In the second of the fiscal years involved, in order to build a new plant, taxpayer borrowed $69,360 from a bank. This loan was secured by a mortgage upon its real estate. The proceeds of the loan were used to pay for construction and not directly to purchase municipal bonds.

For these taxable fiscal years, the Commissioner of Internal Revenue disallowed taxpayer's deductions of interest on the mortgage and on some of the short-term loans.[2] The taxpayer paid the resulting assessments and later brought this refund suit against the United States.

The District Court held that taxpayer incurred the indebtedness to "carry obligations * * * the interest on which is wholly exempt" from Federal income tax within the meaning of Section 265(2) of the Internal Revenue Code. Therefore, judgment was entered for the United States. We agree as to the interest on the short-term loans but not as to the mortgage interest.

*Interest on Short-Term Loans*

During each fall in the years in question, taxpayer used its municipal bonds as collateral for short-term bank loans for essential working capital. Instead of resorting to bank loans, taxpayer could have sold its municipals to meet the high cost seasonal needs of its business. Because this alternative was available to taxpayer, the Government argues that the short-term indebtedness was automatically incurred in order to enable

1. Section 265(2) of the Internal Revenue Code provides in pertinent part (26 U.S. C. § 265(2)):
"No deduction shall be allowed for—
* * * * *
"(2) *Interest.*—Interest on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest on which is wholly exempt from the taxes imposed by this [income tax] subtitle."

2. The disallowed interest on the short-term loans was computed on the difference between the mortgage principal and the value of the municipals.

taxpayer to "carry [tax-exempt] obligations," so that the interest on this indebtedness would be non-deductible under Section 265(2) of the Internal Revenue Code, supra, note 1. The District Court construed Section 265(2) as forbidding the deduction of interest on indebtedness incurred or continued "in order to" or "for the purpose of" carrying tax-exempt obligations. We approve this construction but do not believe deduction is forbidden whenever taxpayer has an alternative of liquidating tax-exempts in lieu of borrowing.

The taxpayer contends that the short-term loans were incurred for the purpose of meeting its heavy fall seasonal financing needs, whereas the Government contends that the indebtedness was incurred for the purpose of making it possible for taxpayer to carry its municipal securities. In holding that the interest on the short-term loans could not be deducted, the District Court stated:

"To accomplish the purpose of obtaining cash to meet plaintiff's seasonal needs, it was not a condition precedent that indebtedness be incurred. To accomplish the purpose of carrying the municipal securities, it was a condition precedent that indebtedness be incurred."

In reaching its conclusion that no refund was due, the District Court construed the Congressional intent as not to grant a deduction for interest payments by a taxpayer who holds securities, the interest from which is not taxable. This is the double benefit prohibited by Section 265(2). Stated another way, Congress sought to prevent a taxpayer from requiring the United States to finance its investments. United States v. Atlas Life Insurance Co., 381 U.S. 233, 247, 85 S.Ct. 1379, 14 L.Ed.2d 358.

In our view, the taxpayer is not *ipso facto* deprived of a deduction for interest on indebtedness while holding tax-exempt securities. The Government has not convinced us that interest deduction can be allowed only where the taxpayer shows that he wanted to sell the tax-exempt securities but could not. For example, Congress certainly did not intend to deny deductibility to a taxpayer who holds salable municipals and takes out a mortgage to buy a home instead of selling the municipals. As the Court of Claims stated in Illinois Terminal Railroad Company v. United States, 375 F.2d 1016, 1021 (Ct.Cl.1967):

"It is necessary [for the Commissioner] to establish a sufficiently direct relationship of the continuance of the debt for the purpose of carrying the tax-exempt bonds."

This construction flows from the use of "to" in Section 265(2). In this case, this nexus or "sufficiently direct relationship" is established by the fact that the tax-exempt securities were used as collateral for the seasonal loans. Under Section 265(2), it is clear that a taxpayer may not deduct interest on indebtedness when the proceeds of the loan are used to buy tax-exempts. 4A Mertens, Law of Federal Income Taxation (1966 ed.) § 26.13 and cases cited. Applying the rule that the substance of the transaction is controlling in determining the tax liability, the same result should follow when the tax-exempt securities are used as collateral for a loan. Surely one who borrows to buy tax-exempts and one who borrows against tax-exempts already owned are in virtually the same economic position. Section 265(2) makes no distinction between them.

■■ In addition, our analysis of the statute and its legislative history convinces us that the deduction should not be allowed if a taxpayer could reasonably have foreseen at the time of purchasing the tax-exempts that a loan would probably be required to meet future economic needs of an ordinary, recurrent variety. This test would not permit this taxpayer to deduct the short-term loan interest, for its regular business pattern shows that it would have to go into debt each fall if it bought or kept municipals

as a long-term investment.[3] This established course of conduct is convincing proof that the underlying reason for these recurring loans was to carry the municipals.

■ To support its position, taxpayer relies on subsequent legislative history. However, subsequent legislative history. is rarely of persuasive weight. United States v. United Mine Workers of America, 330 U.S. 258, 282, 67 S.Ct. 677, 91 L.Ed. 884. Furthermore, subsequent legislative history only indicates that Section 265(2) was not intended to operate as a "mechanical rule." Here we are not applying a mechanical rule but are insisting upon a connection between the tax-exempt securities and the loans before interest deductibility is disallowed.

Taxpayer relies mainly on R. B. George Machinery Co. v. Commissioner of Internal Revenue, 26 B.T.A. 594 (1932) and Sioux Falls Metal Culvert Co. v. Commissioner of Internal Revenue, 26 B.T.A. 1324 (1932). Those cases are distinguishable since the securities were not salable. In the other cases relied upon by taxpayer, the Commissioner prevailed; those cases permit the deduction if the taxpayer's only purpose is to meet business needs. Illinois Terminal Railroad Company v. United States, 375 F.2d 1016, 1021 (Ct.Cl.1967), required taxpayer to have "purity of purpose" to obtain the deduction.

As taxpayer contends, there should be no discrimination against seasonal businesses but neither should they be put in a preferred position. If a non-seasonal business borrowed to buy municipals, the interest on the loans would be non-deductible. There is no reason why a seasonal business should fare better.

■ Taxpayer had the burden of overcoming the presumption of validity of the Commissioner's determination of deficiencies (Drybrough v. Commissioner of Internal Revenue, 376 F.2d 350, 360 (6th Cir. 1967)). This taxpayer has failed to sustain that burden.

*Interest on Mortgage*

■ The $69,360 construction loan was secured by a ten-year 6% mortgage on taxpayer's real estate. No municipal bonds were put up as collateral. The mortgage was for a new plant to meet a growing demand. The entire $69,360 mortgage proceeds were used to pay for this plant. According to the uncontroverted testimony, if taxpayer had sold municipal bonds to pay for the plant, it would have had fewer liquid assets to meet seasonal needs and would have had difficulty in borrowing to meet those needs. Plant construction is undeniably a major, non-recurrent expenditure and is usually financed over a long term. We cannot say that a reasonable person would sacrifice liquidity and security by selling municipals in lieu of incurring mortgage debt to finance a new plant. Business reasons dominated the mortgaging of the property. Therefore, we are unwilling to accept the Commissioner's view that taxpayer should have liquidated municipals instead of obtaining a real estate mortgage loan. There is an insufficient relationship between the mortgage indebtedness and the holding of the municipal bonds to justify denial of deduction of the mortgage interest. For non-deductibility, we have seen that the Commissioner must establish a sufficiently direct relationship between the debt and the carrying of the tax-exempt bonds. That has not been done as to the mortgage, so that the mortgage interest deductions must be allowed under Section 163(a) of the Internal Revenue Code.[4]

The judgment is affirmed in part and and reversed in part and the cause is remanded.

3. Under this test, the deduction would be disallowed here even if the municipals were not used as collateral for the short-term loans.

4. Section 163(a) provides (26 U.S.C. § 163(a)):
"There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."