John S. WYNN, Jr., and Margaret R. Wynn, his wife

v.

The UNITED STATES of America.

Civ. A. No. 41146.

United States District Court
E. D. Pennsylvania.

July 5, 1968.

Henry L. Schimpf, Jr., Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., Mitchell Rogovin, Donald R. Anderson, Richard J. Sideman, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

### HIGGINBOTHAM, District Judge.

This case is before me on the cross motions of the taxpayer and the Government for summary judgment. The question on which the grant or denial of these motions turns is whether the interest for which taxpayer seeks a deduction, pursuant to § 212 of the Internal Revenue Code of 1954, 26 U.S.C. § 212[1] was, within the meaning of § 265(2) of the Code,[2]

> "Interest on indebtedness incurred or continued to purchase or carry obligations * * * the interest on which is wholly exempt from the taxes imposed by this subtitle."

### FINDINGS OF FACT

1. Plaintiffs in this action are John S. Wynn, Jr., and his wife, Margaret R. Wynn (hereinafter called "taxpayers").

2. For the tax years 1960 and 1961, the years for which the taxpayers' tax liability is in question, the taxpayers filed joint returns.

3. During the tax years in question, taxpayer, John S. Wynn, Jr., (hereinafter called "taxpayer") was a partner in the firm of J. W. Sparks & Co., (hereinafter called "firm") a partnership engaged in the securities brokerage business.

4. As part of its business, the firm maintained an account with the First Pennsylvania Banking and Trust Company, designated "Municipal Bond Account", through which it purchased and sold all of its municipal bonds. All purchases were paid for by the bank through this account, and all proceeds from sales were deposited in this account. During any period in which purchases exceeded receipts from sales, the firm incurred an indebtedness to the bank. Between the time of acquisition and sale, the bonds were held by the bank as security for the

---

[1] "§ 212. Expenses for production of income.
  In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
    (1) for the production of income * * *."

[2] "§ 265. Expenses and interest relating to tax-exempt income. No deduction shall be allowed for—
    (1) Expenses. Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest * * * wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 * * * which is allocable to interest * * * wholly exempt from the taxes imposed by this subtitle.
    (2) Interest. Interest on indebtedness incurred or continued to purchase or carry obligations * * * the interest on which is wholly exempt from the taxes imposed by this subtitle. * * *"

outstanding indebtedness of the firm. The firm made monthly interest payments to the bank. It is this interest paid by the firm to the bank that is in question here.

5. The bond purchases for which the indebtedness was incurred were for the firm's own account, rather than on the order of, and for immediate delivery to, a customer.

6. During the tax years in question, taxpayer had an eight per cent interest in the firm as a result of which he was entitled to eight per cent of its profits and responsible for eight per cent of its debts.

7. Based on his eight per cent interest, taxpayer claimed a deduction for eight per cent of the interest paid by the firm on the Municipal Bond Account, while declaring eight per cent of the profits from the tradings in that account as ordinary income. The Internal Revenue Service disallowed the deduction. The following table shows the amounts of money attributable to the various aspects of this trading and the tax consequences for the tax years 1960 and 1961:

| ITEM | 1960 | 1961 |
|---|---|---|
| Total receipts from Municipal Bond Acct. | $7,226,000.00 | $8,832,000.00 |
| Profits on trading from Municipal Bond Acct. | 57,323.90 | 51,648.28 |
| Interest expense on Municipal Bond Acct. incurred by firm. | 19,711.60 | 23,044.03 |
| Tax exempt income earned by firm on securities held in Municipal Bond Acct. | 7,967.51 | 7,608.70 |
| Interest on Municipal Bond Acct. claimed by taxpayer and disallowed by Internal Revenue Service. | 1,576.93 | 1,843.52 |
| Additional tax assessed against, and paid by, taxpayer. | 1,389.41 | 1,473.17 |
| Taxpayer's tax exempt interest income from firm's dealings through Municipal Bond Acct. | 637.40 | 608.69 |

8. As a result of the disallowance of the deduction for the interest expense for the Municipal Bond Account, the Internal Revenue Service assessed a deficiency against the taxpayers for the tax year 1960 in the amount of $1,389.41 and for the tax year 1961 in the amount of $1,473.17. The taxpayer paid the assessment and brought this action seeking to recover the amount paid plus interest.

9. The borrowing described in Finding of Fact 4, supra, was for the purpose of enabling the firm to purchase munici-pal securities (tax exempt obligations within the meaning of § 265(2)) in order to resell them at a profit in the securities market.

10. The purpose of the borrowing described in Finding of Fact 4, supra, was not to earn tax exempt interest on the securities purchased.

DISCUSSION

I. I think that this case must be considered in the light of two recent cases: Wisconsin Cheeseman, Inc. v. United

States of America, 388 F.2d 420 (7th Cir., January 4, 1968) and Leslie v. Commissioner of Internal Revenue, 50 T.C., No. 2 (April 2, 1968).

In the *Wisconsin Cheeseman* case, supra, taxpayer had a highly seasonal business usually requiring a high rate of cash outflow during September, October and November, and resulting in a high rate of cash receipts during December and January. To deal with this situation taxpayer regularly made short term loans from the bank during September, which were repaid as receipts came in during December and January. A portion of its excess receipts, over and above its operating capital requirements for the remainder of the year, were invested in tax exempt securities. These securities were used as collateral for its subsequent September short term borrowings. In addition, during one of the tax years in question, taxpayer borrowed approximately $69,000 secured by a real estate mortgage, to construct an addition to its plant. At that time it held tax exempt securities of approximately $200,000.

The Commissioner disallowed taxpayer's deductions for both mortgage interest paid and interest paid on its short term borrowing. The taxpayer, as here, paid and sued for a refund.

The District Court held that as to both instances the taxpayer incurred the indebtedness "to carry" his tax exempt securities and that therefore none of the interest incurred was deductible.

On appeal, the Court of Appeals held that the test to be applied was not solely whether the taxpayer *held* tax exempts at the time he incurred the obligation the interest on which he sought to deduct, but rather the Commissioner had to establish a reasonably close relationship between the incurring of such obligation and the *purpose* "to purchase or carry" the tax exempts. Applying this test, they affirmed the District Court's decision as to the interest expense on the short term borrowing on the ground that

as far as the "purpose" test was concerned, one who borrowed intending to use the funds to purchase tax exempts was indistinguishable from one who borrowed periodically intending to use the funds for general business purposes and who pledged his tax exempt bonds as collateral therefor.

On the other hand, the Court found that there was insufficient relationship between borrowing for a one-time, large capital expenditure, of a kind usually financed by mortgage secured borrowing and the continued holding of tax exempt securities—especially when selling off the securities and using the proceeds for the plant expansion would have seriously jeopardized taxpayer's liquidity position. With respect to the mortgage interest, the Court held that:

" * * * Business reasons dominated the mortgaging of the property. Therefore, we are unwilling to accept the Commissioner's view that taxpayer should have liquidated municipals instead of obtaining a real estate mortgage loan. There is an insufficient relationship between the mortgage indebtedness and the holding of the municipal bonds to justify denial of deduction of the mortgage interest. * * * * "

(Slip Opinion at 6.)

More recently, the Tax Court, in Leslie v. Commissioner of Internal Revenue, 50 T.C., No. 2, (April 2, 1968), decided, in a case quite similar to that now before me, that the interest expense on the revolving account of a brokerage house, which account was used to purchase both taxable and tax-exempt securities for resale, was deductible. The significant differences between the facts in *Leslie* and those before me are:

1. The borrowed money was used to purchase both taxable and tax exempt securities and the tax exempts represented only a small fraction of the securities purchased.

2. When the daily decision was made whether or not to borrow, it was based on projected receipts and expenditures for the day in *all* securities, and no conscious thought was given to the fact that the borrowing could have been reduced by selling off the tax exempts.

3. The borrowed money was not reasonably traceable to the purchase or holding of tax exempt securities.

4. Selling off the tax exempts would not have obviated the need to borrow.

Given these factors, and the fact that the firm had a policy against purchasing tax exempt securities for investment purposes, the Tax Court held:

"Under all these circumstances, there is not the relationship between the incurring of the indebtedness and the purchase of the tax exempts to justify an inference that the money was borrowed for the purpose of acquiring the tax exempts." (Slip Opinion at 24.)

Taxpayer urges me to hold that this case is analogous to both *Wisconsin Cheeseman* and to *Leslie*, in that his firm's purpose in incurring the obligations in question was to conduct their brokerage business and not "to purchase or carry" tax exempt securities within the meaning of § 265(2), and that there-fore, the deduction for the interest on that indebtedness should not be disallowed. To reach that conclusion I would have to interpret the "purpose" and "relationship" tests set down in those cases to require an intent not merely to acquire securities the interest on which happens to be tax exempt, but *to acquire such tax exempt interest*. Such an interpretation would require that I read § 265(2) "* * * to purchase *for carrying* or carry. * * *"

This question is not novel. In Clyde C. Pierce Corp. v. Commissioner of Internal Revenue, 120 F.2d 206 (5th Cir., 1941), the Court of Appeals affirmed the decision of the Board of Tax Appeals that the taxpayer, a dealer in tax exempt securities, had made only a taxable capital transaction, and had earned no tax exempt interest, when he purchased for a flat price tax exempt bonds whose interest was in default and then managed to collect on the defaulted interest coupons, but that, on the other hand, since the securities were tax exempt bonds, the interest on the money borrowed to carry on these transactions was not deductible. To the taxpayer's argument that the first ruling of the Board was, in effect, that as to his transactions the securities were not tax exempt securities within the meaning of then § 23(b), Revenue Act of 1934, the precursor of present § 265(2), the Court declared:

".* * * The statute * * * means exactly what it says. It must be applied as written. The securities in which petitioner dealt * * * are certainly obligations, the interest on which is wholly exempt from income tax and the money it borrowed and paid interest on was money borrowed to purchase or carry them. The fact that petitioner must pay an income tax on account of capital gains, realized from its activities as a dealer, in the purchase and sale of such securities * * * does not at all affect the question, of whether the securities it dealt in are tax exempt securities.

"To give the invoked statute any other effect than that given by the Board, would be not to enforce but to rewrite it. * * * Nor is the fact that he collected only a small amount of tax exempt interest from them, as compared to the amount of interest he paid on money borrowed to purchase and carry them, of any significance." 120 F.2d at 208.[3]

In both *Wisconsin Cheeseman* and *Leslie,* there was no direct relationship

---

3. See also: Denman v. Slayton, 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500 (1931);

Holton & Co., 44 B.T.A. 202 (1941); Prudden & Co., 2 B.T.A. 14 (1924).

between the decision to borrow and the decision to purchase the tax exempt securities. Here there can be no doubt that taxpayer's firm intended to use the proceeds of its borrowing for the Municipal Bond Account to finance its purchases of tax exempt securities.

That the "purpose" or "relationship" tests are to be applied to the intent to purchase or carry the tax exempt securities themselves, rather than to obtain the interest is further borne out by the legislative history. Since banks obtain a substantial amount of their investment and lending capital from deposits on which they pay interest and since they invest to some extent in tax exemption securities, it was felt that by including interest within what is now § 265(1) these deposits might be treated as obligations the interest on which would not be deductible.[4] The Senate Committee however, urged that interest should not be covered by § 265(1), and that in view of the long standing "purpose" test[5] of now 265(2), as desired, in view of the depression: " * * * a bank or other financial institution will not be denied a deduction for expenses incurred in earning tax-exempt interest."[6] Thus, even where a taxpayer might earn tax exempt interest with the proceeds of borrowing, if the money was not borrowed for the purpose of purchasing or carrying tax exempt bonds he would get the double advantage of both a tax deduction for the interest expense and no tax on the interest earned.[7]

In the case of the securities dealer, such as taxpayer's firm here, which pur-

chased tax exempt securities for its own account rather than for delivery to a customer who had given them a purchase order, it is quite likely that the securities could be held for a sufficient period of time to earn interest. In such cases, the dealer would receive the double benefit. I do not agree with taxpayer's contention that this problem is obviated by reading § 265(1) along with § 265(2) and applying an apportionment, since § 265(1) specifically exempts interest.[8]

■ I conclude, therefore, that since the firm borrowed the money, the interest on which is in question, for the purpose of purchasing tax exempt securities, and despite the fact that they had no intention to hold these securities for the tax exempt interest, the borrowing in question was "to purchase or carry obligations * * * the interest of which is wholly exempt from the taxes imposed by * * * [the Internal Revenue Code] * * *", and thus, the taxpayer is not entitled to a deduction for any of the interest expense pursuant to § 265(2).

■ II. Taxpayer argues, further, that if § 265(2) does preclude a deduction it violates the constitutional prohibition against Federal taxation of the interest on bonds issued by the states and their instrumentalities, Pollock v. Farmers' Loan and Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895), because it effectively wipes out the interest earned, and moreover, places a burden on his trading in these bonds that he would not have had to bear had he dealt

---

4. H.R. 704, 73rd Cong., 2d Sess. at 21–22 (1934).

5. As early as 1918, and again in 1924, amendments were proposed in Congress to disallow deductions for interest expense to the extent that such interest exceeded tax exempt income. These amendments, both of which were defeated, were intended to provide more simple administration than that necessitated by the "purpose" text of *to* purchase or carry." See discussion and review of legislative history in Leslie v. Commis-

sioner of Internal Revenue, 50 T.C., No. 2 (Slip Opinion, at 13.) (April 2, 1968).

6. S.R. 558, 73rd Cong., 2d Sess. at 27. (1934).

7. The Commissioner, too, has ruled that where a business borrowed money for business purposes, and during a delay before the actual expenditure was made invested in tax exempt securities, the taxpayer was not denied a deduction for the interest on the borrowed funds. Rev.Rul. 55–389, C.B. 1951–1,276.

8. See Note 2, supra.

with taxables. In this regard, taxpayer recognizes that the case of Denman v. Slayton, 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500 (1931), is squarely on point against him, and asks that I, in effect, overrule it. This I will not do.

The tax exempt nature of these securities makes them particularly attractive to investors which in turn encourages trading in them, which inures to the benefit of the dealer, who makes money by both buying and selling. It would thus seem unlikely that this application of § 265(2) would materially jeopardize the power of the states and their instrumentalities to borrow. Moreover, no such allegation has been raised.

"The history of income tax legislation is persuasive, if not controlling, upon the question of practical effect. Plummer v. Coler, [178 U.S. 115, 137–138, 20 S.Ct. 829, 837–838, 44 L.Ed. 998 (1900)]. * * * Before the power of Congress to lay the excise tax in question can be denied in the view that it imposes a burden upon the States' borrowing power, it must appear that the burden is real, not imaginary; substantial, not negligible. We find no basis for that conclusion, or any warrant for implying a constitutional restriction to defeat the tax." Willcuts v. Bunn, 282 U.S. 216, 234, 51 S.Ct. 125, 130, 75 L.Ed. 304 (1931).

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this matter. 28 U.S.C. § 1346(a) (1).

2. Internal Revenue Code § 265(2) (1954), 26 U.S.C. § 265(2), precludes the deduction sought by the taxpayer herein.

3. Internal Revenue Code § 265(2) (1954), 26 U.S.C. § 265(2), as applied to the taxpayer herein is not violative of the United States Constitution.

4. Defendant, United States of America, is entitled to summary judgment in its favor against the taxpayer.