KIRCHNER, MOORE AND COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5842–67. Filed May 7, 1970.

*Stephen Gurko*, for the petitioner.
*Charles H. Powers*, for the respondent.

944

948

[REDACTED]

## OPINION

In its business of dealing in municipal bonds, during the years in question, petitioner found it necessary in many cases to borrow money from various banks in order to finance the purchase and holding of such bonds until the time of their subsequent resale. Petitioner incurred interest on these borrowings, a substantial part thereof (the amounts here in issue) being attributable to the periods of time of the various loans up to the designated delivery dates of the bonds to the paying banks representing petitioner's customers. The issue presented for our decision, upon these facts, is whether all or any part of the above-described interest expense falls within the disallowance provisions of section 265(2).

Section 265(2) provides, in pertinent part, as follows:

SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.
No deduction shall be allowed for—

\*      \*      \*      \*      \*      \*      \*

(2) INTEREST.—Interest on indebtedness incurred or continued to purchase or carry obligations * * * the interest on which is wholly exempt from the taxes imposed by this subtitle.

Petitioner interprets the above-quoted subsection as having no application to the interest expenses incurred in the context of its business as a municipal bond dealer, where the primary purpose of such business is to derive income from the resale of municipal bonds at a profit.

As has been the case with several other courts, we likewise cannot adopt this interpretation of section 265(2).

*Paul P. Prudden et al.*, 2 B.T.A. 14 (1925), also involved a municipal bond dealer who found it necessary in his business to incur and continue indebtedness in order to purchase and carry tax-exempt obligations. Admitting that they fell within the literal wording of the predecessor of section 265(2),[5] the petitioners in *Prudden* nonetheless contended that the amounts of interest in question, having been incurred in their business of dealing in municipal bonds, were not within the intendment of this subsection, but instead were deductible as business expenses. The Board of Tax Appeals rejected petitioners' contention, and held that the subsection did apply, stating that (p. 16):

There is no occasion * * * for the application of the rules of statutory construction. The language of the statute is clear and makes no exception. If Congress had intended to except dealers in this class of securities it would have so provided.

Petitioner attempts to distinguish *Prudden* from the present case because of the absence herein of any admission on its part that it fell within the literal wording of section 265(2). The facts we have found on the record herein, however, are equivalent to the admission made in *Prudden*. Additionally, we have concluded, as an ultimate finding of fact, that petitioner, in its business as a dealer in municipal bonds, did incur and continue the indebtedness in question for the purpose of purchasing and carrying such bonds until the time of their subsequent resale, thus fitting it squarely within the wording of this subsection. *Prudden* establishes quite clearly that the fact that the taxpayer is in the business of dealing in municipal bonds does not in any manner deprive this subsection of application where its terms are fulfilled.

In *Nauts* v. *Slayton*, 36 F. 2d 145 (C.A. 6, 1929), reversed and remanded sub nom. *Denman* v. *Slayton*, 282 U.S. 514 (1931), the Circuit Court of Appeals was confronted not only with the issue of the application of the predecessor of section 265(2) to municipal bond dealers, but also of its constitutionality in such application. The court found the statute clearly applicable to municipal bond dealers, but went on to hold that it was unconstitutional in its application to them. The Supreme Court reversed the Circuit Court of Appeals on the constitutional issue and remanded the case to the District Court with instructions to enter judgment for the collector. Although it is not explicit in the decision, the Supreme Court's remand with instructions to enter judgment for the collector obviously had to be based on the determination that the statute applied to the taxpayer, notwith-

[5] Sec. 214(a)(2) of the Revenue Acts of 1918 and 1921.

standing his status as a municipal bond dealer. After describing the double income tax benefit that the statute was enacted to prevent, i.e., both a deduction for interest on indebtedness incurred for the purpose of purchasing or carrying tax-exempt securities, as well as an exclusion from income of tax-exempt interest, the Supreme Court made the final statement (p. 520) that "The fact that respondent [the municipal bond dealer] engaged in the business of buying and selling is not important."

*Wynn* v. *United States*, 288 F. Supp. 797 (E.D. Pa. 1968), affirmed per curiam 411 F. 2d 614 (C.A. 3, 1969), certiorari denied 396 U.S. 1008 (1970), involved facts substantially similar to the present case, except that it dealt with a separate account maintained by a security brokerage firm for the sole purpose of buying and selling municipal bonds. The taxpayer in *Wynn* contended that the interest on the obligations in question, notwithstanding their direct traceability to the purchase of tax-exempt bonds, was incurred as a deductible expense in conducting his brokerage business and not "to purchase or carry" tax-exempt securities within the meaning of section 265(2). The court rejected the taxpayer's contention as requiring an untenable interpretation of section 265(2), if its application is limited to purchases of tax-exempt bonds for the purpose of earning the interest thereon, and it is not applied to cases in which the bonds were purchased for the purpose of subsequent resale at a profit. If the money is borrowed for the purpose of purchasing tax-exempt securities section 265(2) denies any interest deduction to the bond dealer.

Notwithstanding the cases summarized above,[6] petitioner seemingly feels that if it somehow gives a new twist to the same arguments presented by the taxpayers in these cases a different holding will magically be forthcoming from this Court. Instead of offering the already rejected argument that a municipal bond dealer does not come within the intendment of section 265(2), petitioner applies a "purpose" test, as established in a line of indirectly related cases, to come to the same result precluded by the aforementioned cases.

In each of the cases relied upon by petitioner, the courts were faced with a situation where the relationship between the purchasing or carrying of the municipal bonds and the incurring or continuation of the indebtedness could not be directly traced. In view of the absence of a direct relationship, the courts found it necessary to examine the particular facts and circumstances involved in order to determine the purpose of the loan.

[6] For other cases essentially to the same effect, see *R. O. Holton & Co.*, 44 B.T.A. 202 (1941) ; and *Clyde C. Pierce Corp.* v. *Commissioner*, 120 F. 2d 206 (C.A. 5, 1941), affirming a Memorandum Opinion of the Board of Tax Appeals.

Thus, in *John E. Leslie*, 50 T.C. 11 (1968), revd. (subsequent to the filing of briefs herein) 413 F. 2d 636 (C.A. 2, 1969), certiorari denied 396 U.S. 1007 (1970), the case upon which petitioner seems to place its heaviest reliance, we were confronted with a situation where a large stock brokerage firm was incurring an average monthly indebtedness of $80 million and carrying an average monthly amount of tax-exempt securities of $2 million. It was not the tidy situation where $2 million of the $80 million was directly traceable each month to the purchase of tax-exempt securities; the loans were made on a day-to-day basis for all general business needs, at which time the firm was either already carrying the tax-exempt securities or making the initial purchase thereof.

In *Leslie* we carefully reviewed the legislative history of section 265(2) and concluded that this subsection is to be applied only when the indebtedness was incurred or continued for the *purpose*, not merely because the proceeds are so used, of purchasing or carrying tax-exempt securities.[7] In the absence of any direct relationship or traceability between the borrowing involved and the relatively minor purchases of tax-exempt securities, we could not infer the prohibited purpose of section 265(2) and, consequently, sustained petitioner's position that all of the interest in question was deductible. While agreeing with the "purpose" test set out by the Tax Court, the Court of Appeals found, however, that there was a sufficient nexus between an allocable portion of the average monthly loans and the purchasing and carrying of tax-exempt securities to warrant an application of section 265(2).

The other cases cited by petitioner as authority for the validity of the "purpose" test, which it seeks to apply herein, e.g., *Illinois Terminal Railroad Co.* v. *United States*, 375 F. 2d 1016 (Ct. Cl. 1967), *Wisconsin Cheeseman, Inc.* v. *United States*, 388 F. 2d 420 (C.A. 7, 1968), also involve situations where the purchase and carrying of the tax-exempt securities were not directly traceable to the incurrence and continuation of the indebtedness. The only inquiry of these cases was as to whether there was a "sufficiently direct relationship" between the incurrence and continuation of certain indebtedness and the purchase and carrying of the tax-exempt securities there involved. The taxpayer's ultimate intention of either holding the tax-exempt securities for investment, or later reselling them at a profit, was ir-

---

[7] A good illustration of the distinction between the use of loan proceeds and the purpose of the incurrence of the loan is found in Rev. Rul. 55-389, 1955-1 C.B. 276. This revenue ruling dealt with a taxpayer who borrowed money with the purpose in mind of financing plant and equipment expansion, but temporarily used a substantial portion of the loan proceeds to purchase and carry tax-exempt bonds while awaiting the time when payment on the plant and equipment expansion would have to be made. Recognizing the true purpose of the borrowings, as distinguished from their temporary use, the Internal Revenue ruled that sec. 265(2) was inapplicable to the situation. We are not confronted with such a situation in that both the use and purpose of the loans involved are quite obviously the same, i.e., to purchase and carry tax-exempt securities.

relevant to the application of the purpose or "sufficiently direct relationship" test.

Petitioner has lifted the purpose test out of the context of the indirectly related cases described above and stretched it to the point of distortion in applying it to the facts of the instant case. Petitioner correctly points out that its business cycle consists of three steps, namely the purchasing, carrying, and reselling at a profit of municipal bonds. In that the ultimate or primary purpose of its business resides in the third step of the cycle, i.e., reselling at a profit, the other steps should all be viewed as being incidental to this primary purpose. Having concluded that the purchasing and carrying steps are merely incidental to the third step, petitioner rounds out his misapplication of this test by concluding that the purpose of the indebtedness incurred and continued herein was to resell municipal bonds at profit, a purpose which is not within the disallowance provisions of section 265(2).

We reject the suggested legerdemain of this slippery interpretation of the purpose test. The net result would be contrary to *Prudden*, *Denman*, *Wynn*, and other like cases, and deny this subsection's application to municipal bond dealers, in whose business the primary purpose would always be reselling at a profit. We conclude that a proper application of the purpose test, in alignment with the results of already decided cases, requires a determination as to what the loan proceeds were intended to be expended for, not the ultimate purpose of the purchaser by whom the expenditure was made. Put another way, the application of section 265(2) is determined by the purpose of incurring or continuing an indebtedness, and not by the ultimate plan or purpose for the subsequent disposition of such bonds.

We have concluded as an ultimate finding of fact that petitioner incurred and continued the indebtedness here involved for the purpose of purchasing and carrying tax-exempt securities; accordingly, petitioner's contention that all or an allocable part of the amounts of interest in issue do not come within the disallowance provisions of section 265(2) cannot be sustained.

In its alternative contention, petitioner asserts that the excess of the interest expenses in question over the amounts of tax exempt income earned during the years involved should be deductible. Unfortunately, the statute does not give any indication of approval of this method, and the legislative history thereto clearly rejects this "offset" approach. See discussion and review of legislative history in the *Leslie* case and *Wynn* v. *United States*, *supra*. We must also reject it here.

To reflect the above conclusions and various concessions made by both parties,

*Decision will be entered under Rule 50.*