**KIRCHNER, MOORE AND COMPANY,
Appellant,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Appellee.**

**No. 636–70.**

United States Court of Appeals,
Tenth Circuit.

Oct. 8, 1971.

Stephen Gurko, Denver, Colo., for appellant.

Wesley J. Filer, Atty., Tax Div., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and Bennet N. Hollander, Attys., Tax Div., Dept. of Justice, with him on the brief), for appellee.

Before PHILLIPS, SETH, and Mc-WILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from the Tax Court which held that petitioner was not entitled to deduct certain interest payments as ordinary business expense, 54 T.C. 940.

Petitioner is a dealer in tax-exempt municipal bonds. Its business consists of purchasing bonds from municipalities and reselling them as soon as possible. Occasionally petitioner cannot resell the bonds on the day of purchase, either because the customer is too far away to take immediate delivery, or because a buyer has not yet been found. In such instances petitioner borrows money from commercial banks to pay for the bonds, using the bonds as security. The loan, with interest, is repaid from the proceeds of the eventual resale of the bonds. Petitioner takes advantage of the tax-exempt nature of the interest earned on the bonds while they are in its possession.

The basic issue concerns section 265(2) of the Internal Revenue Code of 1954, which provides: "No deduction shall be allowed for interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle."

In the tax years 1962–1966 petitioner deducted from reported income the interest it paid to the banks on the loans mentioned above. Upon being assessed by the Commissioner for tax deficiencies, petitioner paid the amounts demanded and initiated this suit in the Tax Court. Petitioner argued to the Tax Court that it did not borrow money to "purchase or carry" tax-exempt bonds, and the deductibility of interest paid is therefore not controlled by section 265(2). Petitioner maintains that its purpose in borrowing was to obtain tax-exempts for *resale*, and that this phase of its "business cycle" is what specifically takes petitioner outside of section 265(2).

As an alternative argument petitioner contended before the Tax Court that it is at least entitled to allocate the interest it pays on these loans to each phase of its "business cycle." By doing this petitioner asserts that it may claim a deduction of that portion of interest paid attributable to the "resale phase" of the cycle.

The Tax Court ruled in favor of the Commissioner, rejecting each of petitioner's theories. As an ultimate finding of fact the judge found that petitioner incurred and continued the indebtedness in question for the purpose of "purchasing and carrying" such bonds until the time of their resale, thereby putting petitioner's interest payments squarely within section 265(2). This rejected petitioner's claim for an allocation as described above.

On this appeal petitioner has abandoned its claim that its interest expense is completely outside the purview of section 265(2) of the Internal Revenue Code of 1954, and asserts only an argument for allocation of interest expense. Petitioner's position is that it has a three-part business "cycle," that is, the purchase, the carrying, and the resale of tax-exempt securities. The interest expense incurred for the purchase and carrying of the bonds petitioner admits to be non-deductible. Petitioner urges, however, that the interest on obligations incurred or continued which pertains to the resale of the bonds is not covered by section 265(2) and is therefore deductible.

In its opinion below the Tax Court cited cases which directly hold that interest expenses of those engaged in the business of buying and selling tax-exempts falls within section 265(2) or its precursor. Paul P. Prudden et al, 2 B. T.A. 14 (1925); Denman v. Slayton, 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500 (1931). Petitioner seeks to avoid application of this rule by urging that in the instant case a novel issue, the allocation of interest, is presented which distinguishes the present case from Prudden and Denman v. Slayton.

Petitioner claims that the Tax Court's finding that it incurred and continued this indebtedness for the purpose of purchasing and carrying the bonds until resale is "clearly erroneous." It is contended that the Tax Court should have found that the petitioner's purpose in incurring and continuing these obligations was to purchase, carry *and* resell the bonds.

Petitioner relies on Wisconsin Cheeseman, Inc. v. United States, 388 F.2d 420 (7th Cir. 1968), where the "purpose test" was employed and illustrated. There the taxpayer incurred high costs in the last three months of each year, and money was borrowed annually to cover these costs. Part of the borrowed money was used each year to buy tax-exempt bonds to be used as collateral for the bank loans. However, taxpayer in one of the tax years borrowed money to expand its plant, securing the loan with a mortgage upon its real estate. The proceeds of the mortgage loan were used to pay for construction and not directly to purchase tax-exempts. The Circuit Court held that, as to the interest owed on the usual annual loans, taxpayer had no claim to a deduction. The reasoning was that taxpayer could have sold its tax-exempts as opposed to securing loans with them, and therefore the obligations here were "continued" to "carry" the bonds. Regarding the interest on the mortgage, the Commissioner also argued that taxpayer could have sold its tax-exempts to finance plant expansion; since it chose not to do so, but to mortgage its property, the debt on the tax-exempts was "continued" to "carry" the bonds. The Seventh Circuit did not adopt this reasoning; instead it employed the "purpose" test, saying " * * * there is an insufficient relationship between the mortgage indebtedness and the holding of the municipal bonds to justify denial of deduction of the mortgage interest." A similar ruling obtains in Revenue Ruling 55–389, 1955–1 C.B. 276, cited by petitioner.

Petitioner relies on the purpose rule of the Wisconsin Cheeseman, Inc., argu-

ing that its purpose in incurring indebtedness included the purpose of selling these bonds, and to the extent that the interest paid reflects this purpose, a deduction is allowed.

Petitioner also relies on Leslie v. Comm'r, 50 T.C. 11, rev'd, 413 F.2d 636 (2d Cir.). In Leslie, a brokerage firm dealt in tax-exempt securities, but such securities constituted less than one per cent of its average monthly business. In the firm's checking account its funds were commingled so that the source of the funds could not be traced. While the purchase, continued ownership, or sale of tax-exempts had their effect on day to day cash requirements of the firm, these transactions were not specifically considered in determining the amount of its bank borrowings. The Tax Court ruled that the purpose of this indebtedness was not to purchase or carry the tax-exempts and on this basis granted Leslie his deduction. Reversing the Tax Court, the Circuit Court said:

"* * * [T]he fact that money was borrowed 'in the conduct of [the firm's] large and many-sided business activities' by no means negates the existence of a purpose, to the extent that the borrowing allowed [the firm] to deal in and retain a portion of the tax-exempts."

The court went on to say:

"* * * The Tax Court was concerned with whether or not [the firm] was 'consciously' considering selling off the tax-exempts, or whether there was a 'plan' to invest and hold tax-exempts. But this should not control. A more appropriate interpretation of Section 265(2) is whether or not there is a business 'purpose' to purchase or carry obligations the interest on which is exempt, and to incur indebtedness therefor."

The Circuit Court proceeded to allocate that part of the firm's debt which pertained to section 265(2) securities and supported the Commissioner's tax claim against this allocated money. Petitioner here contends that had Leslie requested the type of allocation being asked for here (between purchase, carrying, and resale), he would have received his deduction on the portion of the debt related to the resale phase of his business. The Second Circuit, however, made no mention of this, and its ruling that Leslie had incurred the debts for the purchase and carrying of the securities, linked with the court's open recognition of the purpose to resell the bonds, suggests that it equated "resale" with "carrying."

The "purpose test" is also dealt with in Wynn v. United States, 288 F.Supp. 797 (E.D.Pa.1968), aff'd per curiam, 411 F.2d 614 (3d Cir. 1969). Wynn was a partner in a firm which dealt in tax-exempt securities. The bond purchases for which the firm's indebtedness was incurred were for the firm's own account, rather than on the order of, and for immediate delivery to, a customer. This borrowing was for the purpose of enabling the firm to purchase municipal securities to resell them at a profit. Wynn asked the court to rule that his case was analogous to Wisconsin Cheeseman and Leslie, in that his firm's purpose in incurring the obligations in question was to conduct their brokerage business and not to "purchase or carry" tax-exempt securities within the meaning of section 265(2). In other words, Wynn asked the court to find that his firm's purpose was resale, and since resale is not covered by section 265(2), the interest on the firm's indebtedness is deductible. The court ruled against Wynn, saying that the fact that resale is intended does not affect the basic fact that the firm purchased and carried these bonds. The court in Wynn did rule that when a securities broker borrows money to buy tax-exempt bonds for resale, he has incurred an obligation to purchase and carry the bonds. The fact that he intends to resell is of no import, as the elements of purchase and holding were present and section 265(2) therefore applies. The court in Wynn refused to make an apportionment requested by the taxpayer, but this is a dif-

ferent apportionment argument than the one presented in the instant case.

It has been consistently held that securities brokers who go into debt to buy tax-exempt securities for resale do so to "purchase" and "carry" these tax-exempts. Paul P. Prudden; Denman v. Slayton; Leslie v. Comm'r; Wynn v. United States. It is true that in none of these cases did the taxpayer argue that he should be granted a deduction for that portion of interest paid allocable to the resale phase of his business. However, in each case the intent to resell was acknowledged by the court and still these courts held that the indebtedness was incurred or continued to "purchase or carry" these tax-exempts. It is therefore apparent that these courts concluded that a firm must carry the securities before he sells them, and this fact is dispositive of the entire question. We agree with this position.

We find no inconsistency between the stipulations and the findings of the Tax Court. The petitioner urges that such exists as to the purpose of the borrowing, in that resale was one of the purposes. It is apparent that resale of the securities was one of the main purposes of petitioner's business. However, the debts were incurred to buy the securities and the length of time the debt existed was determined by the holding for resale, but the resale was not an event for which money was borrowed. The *business* of the petitioner perhaps had three stages or "cycles" as it calls them, but the borrowing and the interest charges under this record were for the purchase and the holding, as the Tax Court found. This finding is supported by the record and is sufficient to invoke section 265(2) of the Code as to all the interest charges incurred. The allocation argument advanced by petitioner is ingenuous, but it mixes the apples and the oranges. The interest expense was a factor of the amount of the purchase and the time the bonds were held by petitioner. "Holding" is a time concept. Title to the bonds under this record vested in petitioner when they were de-

livered to it, and continued in petitioner until the bonds were delivered, in most cases, to the purchaser's bank. The "holding" under the Act thus continued until the title passed. The selling activities were a business function of petitioner, but insofar as pertinent here, the "sale" served only to end the holding period and nothing else. Petitioner probably had many other business functions going on during a "holding," but the holding expense was incurred to buy time and when the time was up, the sale was over.

Affirmed.