PAUL N. RIFKIN AND IRENE S. RIFKIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rifkin v. Commissioner
Docket No. 1790-86.
United States Tax Court
T.C. Memo 1988-255; 1988 Tax Ct. Memo LEXIS 278; 55 T.C.M. (CCH) 1055; T.C.M. (RIA) 88255; June 8, 1988. Darron C. Knutson, for the petitioners. John C. Schmittdiel, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined deficiencies in petitioners' 1980 and 1981 Federal income tax in the respective amount of $ 9,216 and $ 6,451. The issue for decision is whether section 265(2)[1] causes interest paid on a bank loan secured by municipal bonds *279 to be nondeductible. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by the reference. When petitioners filed their petition, they resided in Mendota Heights, Minnesota. Since the early 1960's, petitioner Paul Rifkin (hereinafter individually referred to as petitioner) has been a director of Drovers State Bank South St. Paul (the "Bank"). [2] During the years in issue, petitioner maintained checking and savings accounts at the Bank. On December 24, 1979, petitioner borrowed $ 118,000 from the Bank (the "Loan"). Petitioner used the funds from the Loan to purchase two condominium units for investment purposes in Winter Park, Colorado. As evidence of the Loan, petitioner executed a note containing the following provision: 2. Security and *280 Set-Off. To secure payment of the indebtedness evidenced by this Note and all other indebtedness, liabilities and obligations of Debtor to Secured Party, whether now existing or hereafter arising and whether direct or indirect, due or to become due, absolute or contingent, primary or secondary, or several or joint and several (all such indebtedness, liabilities, and obligations are herein collectively called "Obligations"), Debtor hereby grants to Secured Party a security interest under the Uniform Commercial Code (hereinafter called "Security Interest") in, and also a general lien upon, the following property: Various Municipal Bonds
and all other property of every kind of description of the Debtor, which may now or hereafter be in the possession or control of the Secured Party for any purpose, together with the proceeds thereof (all such property, including proceeds, being hereinafter called "Collateral"). As further security for payment of the Obligations, Secured Party has the right, in the event of Buyer's default, to set-off against the Obligations any amount then owed by Secured Party to Buyer. Interest on the municipal bonds described as collateral in that note *281 provision was exempt from Federal income tax. At the time of the Loan, the municipal bonds were then being held on petitioner's behalf by the Bank. The Bank's credit file on petitioner contained the following comments:
12-24-79 Today after Board of Directors approval on Friday, I have advanced Mr. Rifkin $ 118,000 secured by a Municipal Bond in the amount of $ 125,000, (bearer bond) for a period of three years, rate of interest 12 percent, payments of $ 39,000 each on December 31, 1980 and 1981 and the balance of $ 40,000 due December 31, 1982. Funds were used to allow Mr. Rifkin to purchase two condominiums in Colorado for speculation and possible resale. Total amount owing is $ 118,000. On their 1980 and 1981 tax returns, petitioners took deductions for interest paid on the Loan in the respective amounts of $ 14,470 and $ 9,480. In the notice of deficiency, respondent disallowed those deductions in their entirety. OPINION We must determine whether any of the interest paid by petitioner on the Loan is deductible. In support of his case, petitioner makes several arguments. His primary argument is that he has shown compelling non-tax reasons for maintaining his *282 investment in tax-exempt securities, and as such, he is not subject to the general rule of section 265(2) which disallows deductions for interest paid on loans relating to tax-exempt securities. Petitioner suggests that the Loan was secured by tax exempt securities for two "non-tax reasons." First, Federal Reserve Board regulations required any loan made to petitioner, a director of the Bank, to have been on terms comparable to loans to third-party borrowers and to have been approved by the Bank's board of directors. [3] Petitioner asserts that he offered the municipal bonds as collateral for the Loan because he wanted to expedite the approval for and processing of the Loan and because he did not want the other directors to delve into his personal financial affairs. Petitioner asserts that by offering the municipal bonds as collateral, (1) he would not have been required to wait for the Bank to investigate and approve as security for the Loan and the use of the investment condominium units in another state, and (2) he need not have disclosed his personal financial affairs to the board, as would have been required before an unsecured loan could have been approved. Second, petitioner *283 asserts that another non-tax reason for securing the Loan by municipal bonds was that the value of the bonds had decreased because of high interest rates, so he could not sell the bonds without incurring substantial losses. Petitioner also argues in the alternative that he did not intend to, and in fact, did not create a valid security interest in the municipal bonds under the Minnesota Uniform Commercial Code. Such an absence of a security interest, according to petitioner, excludes the pledge of the municipal bonds from the application of section 265(2). Last, petitioner argues that even if the use of the municipal bonds as security for the loan causes a disallowance of the interest deduction, the deduction should not be disallowed entirely because petitioner also had savings and checking accounts at the Bank which the Bank could use as a setoff against the Loan. Respondent contests all three of petitioner's arguments and asserts that the interest deductions should be disallowed in their entirety pursuant to section 265(2). Income tax deductions *284 are a matter of legislative grace and petitioners have the burden of showing their entitlement to the interest deductions disallowed in the notice of deficiency. Interstate Transit Lines v. Commissioner,319 U.S. 590, 593 (1943); Rule 142(a). Section 265(2)[4] disallows a deduction for interest "on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt" from Federal income taxes. The statutory disallowance is not activated merely by the simultaneous existence of an indebtedness and a holding of tax-exempt obligations. McDonough v. Commissioner,577 F.2d 234, 235 (4th Cir. 1978), affg. a Memorandum Opinion of this Court; Bradford v. Commissioner,60 T.C. 253, 257-258 (1973). Rather, the pivotal inquiry is whether there was a sufficiently direct relationship between the indebtedness and the carrying of the tax-exempt obligations. McDonough v. Commissioner, supra;Wisconsin Cheeseman, Inc. v. United States,388 F.2d 420, 422 (7th Cir. 1968); New Mexico Bancorporation v. Commissioner,74 T.C. 1342, 1353 (1980); Swensen Land & Cattle Co. v. Commissioner,64 T.C. 686, 696 (1975). *285 Appeal in the instant case lies to the Eighth Circuit, so we are constrained to follow the precedent established in that Court. Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). In Levitt v. United States,517 F.2d 1339, 1344 (8th Cir. 1975), the Eighth Circuit relied upon Wisconsin Cheeseman, Inc. v. United States, supra, to hold that a direct relationship between the acquisition or carrying of tax exempt securities and a borrowing or continuing of borrowing is deemed established if tax-exempt securities are used as collateral to incur or continue loans. In short, the Eighth Circuit held that an interest deduction is allowed only to the extent that loans are supported by collateral other than tax-exempt bonds. 517 F.2d at 1344. *286 We read the Levitt case to lay down a bright line rule in that Circuit that the use of tax-exempt securities as collateral for a loan causes interest expense on such a loan to be nondeductible to the extent that tax-exempt securities collateralize the loan. [5] The holding of Levitt thus nullifies petitioner's first argument that the interest deductions should be allowed on the basis of any asserted non-tax reasons for collateralizing the loan by municipal bonds. We next address petitioner's argument that the Bank did not have a valid *287 security interest in the municipal bonds "securing" the Loan. The note evidencing the Loan contains a provision which on its surface seems to give the Bank a security interest in municipal bonds. Petitioner, however, contends that the description of the bonds is too vague to create a valid security interest in the bonds. In regard to that contention, we must keep in mind the rule in this Court that a taxpayer must provide strong proof to overcome the form of the transaction he has chosen. Rothstein v. Commissioner,90 T.C. 488, 495 (1988); Coleman v. Commissioner,87 T.C. 178, 202 (1986), affd. in an unpublished opinion 833 F.2d 303 (3d Cir. 1987). The form of the Loan was such that the parties clearly intended the Loan to be secured by tax-exempt bonds. Petitioner certainly has not produced sufficient evidence to convince us that the bonds were not intended to be collateral for the Loan. In fact, we think it incredulous that petitioner, the chairman of the Bank's board of directors for several years, should assert a proposition in this *288 proceeding that is so patently contradictory to the obvious intention of the parties to the loan transaction. In addition, we note that petitioner readily has admitted that municipal bonds were in the possession of the Bank when the Loan was made and the note was executed. The record also clearly indicates that municipal bonds owned by petitioner were held as collateral by the Bank at all times during the years in issue. Minnesota law provides that a security interest attaches with respect to collateral and becomes enforceable against the debtor or third parties once the collateral is in possession of the secured party pursuant to agreement. Minn. Stat. Ann. secs. 336.9-203(1), 336.8-321, and 336.8-313(1) (West Supp. 1988). When the collateral is in possession of the secured party, the need for an adequate description, or even a written instrument for that matter, does not arise. See Minn. Stat. Ann. sec. 336.9-203 Official Comment, No. 3 (West 1966). Our reading of those provisions indicates that the Bank had a valid security interest under Minnesota law in the municipal bonds in *289 its possession during the pendency of the Loan. In fact, petitioner does not even address those Minnesota statutory provisions relating to possession of collateral by a creditor. We thus reject petitioner's argument and hold that a sufficiently direct relationship existed between the Loan and petitioner's tax-exempt obligations. [6]
On account of our holding above, we now must address *290 petitioner's final argument, i.e., that Levitt requires the interest on the Loan to be allocated between the municipal bonds and the checking and savings accounts maintained in petitioner's name at the Bank. Petitioner asserts that section 265(2) does not disallow deductions to the extent the checking and savings accounts collateralized the Loan. In addressing petitioner's assertions, we first note that none of the documents in evidence indicates that the Loan was to be secured by petitioner's checking and savings accounts. We also find the comments from the Bank's credit file on petitioner to be particularly probative to this final issue. Among those comments is the statement that the security for the Loan was a municipal bearer bond in the face amount of $ 125,000. Although petitioner asserts that a rise in interest rates had depressed the value of the collateral for the Loan, he has forwarded no evidence which would allow us to determine that the fair market value of the collateral was less than $ 118,000, the face amount of the Loan. [7]
*291 Petitioner also has not provided us with any information regarding either the face value or the fair market value in 1980 or 1981 of the bonds held by the Bank. The only documents in evidence regarding the values of bonds held by the Bank pertain to dates in 1979 and 1982, not to any date during the years in issue. Thus, petitioner has not provided us with sufficient evidence so that we could make an allocation. Accordingly, we find that petitioner has not proved that the Loan was supported by any collateral other than tax-exempt securities. Rule 142(a). We therefore hold that the interest on the Loan is allocable entirely to the municipal bonds and that petitioner is not entitled to any deductions for interest on the Loan in 1980 and 1981. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. As of the date of trial in 1987, petitioner was chairman of the Bank' board of directors. ↩
3. See 12 C.F.R. sec 215.4 (1988). ↩
4. Section 265 was amended by the Tax Reform Act of 1986, Pub. L 99-514, sec. 902(b), 100 Stat. 2817, and the provision disallowing a deduction for interest used to finance tax-exempt securities currently is contained in section 265(a)(2)↩. 5. Cf. Earl Drown Corp. v. Commissioner,86 T.C. 217, 224 n.10 (1986), where we noted that the position of this Court is that the mere fact that tax-exempt securities are used to collateralize a loan does not establish per se the necessary direct relationship between indebtedness and the carrying of tax-exempts. See also New Mexico Bancorporation v. Commissioner,74 T.C. 1342, 1353 (1980). Implicit in that position, however, is the absence of a proscription of that position by reason of the Golsen↩ rule. 6. We note also that we do not interpret the holding of the Levitt v. United States,517 F.2d 1339 (8th Cir. 1975) case as being prefaced on the validity of the lender's security interest in a tax-exempt obligation. Rather, as the Levitt case states, The crucial fact is that with each new loan the borrower, * * * deposited or maintained tax exempts as collateral to partially support the loan balance. Thus, the taxpayer incurred or continued his indebtedness in order to carry the tax-exempt securities. [Citations omitted.] Consequently, the deduction of interest paid to the Bank on the loans * * * must be disallowed in direct proportion as the loans were supported by tax-exempts deposited with the Bank as collateral. * * *
517 F.2d at 1346-1347↩. 7. The parties have stipulated into evidence a letter from the Bank, dated July 30, 1982, which states that the Bank held in its safekeeping vault tax-exempt bonds for petitioner in the principal amount of $ 115,000. According to the terms of the Loan, however, the Loan balance outstanding by 1982 would have been no more than $ 40,000, an amount less than the face amounts of the bonds held by the Bank as collateral. ↩