**DILLON, READ & CO., INC. and Subsidiaries, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 165–85T.

United States Claims Court.

Jan. 22, 1987.

---

**530**

George J. Noumair, New York City, for plaintiffs.

Neil V. Birkhoff, with whom were Asst. Atty. Gen. Glenn L. Archer, Jr., Mildred L. Seidman, and Gerald B. Leedom, Washington, D.C., for defendant.

**OPINION**

BRUGGINK, Judge.

This case raises an issue of the deductibility of certain interest expenses under section 163 of the Internal Revenue Code. That section allows a deduction for "all interest paid ... on indebtedness." 26 U.S.C. § 163 (1982). Section 265(2), however, disallows the interest deduction with respect to "indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from" taxation. 26 U.S.C. § 265(2). Pending before the court is Plaintiffs' Motion For Summary Judgment. The limited question raised by the motion is whether, under section 265(2), the collateralization of loans by taxable securities is conclusive evidence that interest paid on those loans is deductible. After consideration of the submissions and oral argument, the motion is denied for the reasons set out herein.

### I. Factual Background

Plaintiff Dillon, Read & Co., Inc. ("Dillon")[1] is engaged in business as an investment banking firm. In connection with that business, it acts as a broker and a dealer in stocks and securities.

During the tax years in question, 1974–1977, plaintiffs incurred interest expense on indebtedness. Some of this indebtedness was collateralized by tax-exempt securities; some was collateralized by taxable securities. The record does not reflect whether there were unsecured loans.

During the years in question, defendant disallowed as a deduction interest accrued on loans incurred to acquire and carry tax-

---

1. The deductions involved in this case are all attributable to the broker-dealer business carried on by plaintiff Dillon, Read & Co., Inc. The other plaintiffs were named in this action only because they filed a consolidated return with their parent, Dillon.

exempt municipal bonds. Dillon concedes that interest on those loans is not deductible. Thus, there is no dispute between the parties as to loans collateralized by tax-exempt securities. However, Dillon deducted its interest charges for all of its other loans for each of those years. The Internal Revenue Service ("IRS") concedes that with respect to those remaining loans it found no direct evidence of a purpose proscribed by section 265(2). It nevertheless disallowed a portion of the interest charges taken for each of those years because the nature of Dillon's business involved buying and selling tax-exempt obligations as well as other securities. The IRS thus inferred that some of the interest was applicable to the purchase or carrying of tax-exempt securities.[2] No additional facts appear in the record which are necessary to resolution of the motion for summary judgment.

## II. Discussion

■ Section 265(2) has been construed in a number of decisions. *See, e.g., Denman v. Slayton,* 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500 (1931) (construing a predecessor provision); *Investors Diversified Services, Inc. v. United States,* 216 Ct.Cl. 192, 575 F.2d 843 (1978); *Phipps v. United States,* 188 Ct.Cl. 531, 414 F.2d 1366 (1969); *Leslie v. Commissioner,* 413 F.2d 636 (2d Cir. 1969), *cert. denied,* 396 U.S. 1007, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970); *Wisconsin Cheeseman, Inc. v. United States,* 388 F.2d 420 (7th Cir.1968); *Illinois Terminal Railroad v. United States,* 179 Ct.Cl. 674, 375 F.2d 1016 (1967); *Wynn v. United States,* 288 F.Supp. 797 (E.D.Pa.1968), *aff'd,* 411 F.2d 614 (3rd Cir.1969); and *Bradford v. Commissioner,* 60 T.C. 253 (1973). These cases establish certain principles. The most general is that application of section 265(2) is triggered only upon a determination, based on all the facts and circumstances, that the indebtedness is incurred or continued for the purpose of purchasing or carrying tax-exempt securities. It is not enough merely that the taxpayer

has incurred or continued a debt during a time that it holds such obligations.

Three of these cases—*Leslie, Bradford,* and *Wynn*—are closely on point because they also involve broker-dealers. In *Leslie,* for example, the taxpayer was a partner in a brokerage firm. The firm's business, like Dillon's, consisted of buying and selling securities and commodity contracts for its customers. In that process, it acquired tax-exempt securities for resale to its customers. The firm had to borrow funds from banks in order to carry customer accounts receivable, and it pledged customer assets for those loans. Unlike Dillon, it did not use its tax-exempt securities as collateral for any indebtedness. The court conceded that borrowed monies were not directly traceable to the holding of tax-exempt securities; that the securities were acquired as a consequence of the brokerage business; and that they were only held for a short period of time. Nevertheless, the court concluded:

> Bache borrowed money for the purpose of conducting its business, including the holding of some tax-exempt securities, and ... since the use of the borrowed funds cannot be traced, it is reasonable to allocate them to all the business purposes of Bache.... As the 7th Circuit in *Wisconsin Cheeseman* noted, the need for incurring indebtedness was ordinary and recurrent. Had Bache not held the tax exempt securities, its monthly average assets would be decreased by $1,935,522.67, and it presumably would incur decreased indebtedness in that amount, and then decreased interest expense.

413 F.2d at 639.

To the same effect is the decision of the Tax Court in *Bradford.* As in *Leslie,* tax-exempt bonds were not pledged as security for loans, and the opinion does not reflect any direct proof linking loans to the purchase of tax-exempt securities. Nevertheless, the Tax Court followed the *Leslie* analysis and concluded that "the partner-

---

**2.** Although not clear from the record, based on counsels' representations at oral argument, Dillon held as assets tax exempt securities other than those used as loan collateral.

ship incurred and repaid indebtedness on a day-to-day basis in order to carry on its securities business, including the purchase and sale of tax-exempt bonds." 60 T.C. at 257.

■ These cases stand for the proposition that if a broker-dealer has a continuous course of business of buying and selling both taxable and tax-exempt securities and uses borrowed funds, an inference can be drawn from the very nature of this business that some of the loans were used to purchase tax-exempt obligations.

The IRS has attempted to capture the case law applications of section 265(2) in Revenue Procedure 72–18, 1972–1 C.B. 740. Under 72–18, evidence of intent to purchase or carry tax-exempt securities with loan proceeds can be either direct or inferential. In a somewhat tautological manner, the procedure describes direct evidence of intent to purchase as that which permits a direct tracing of loan proceeds to purchase of tax-exempt securities. Direct evidence of an intent to *carry* such securities exists when they are used as collateral for loans.

In the absence of direct evidence 72–18 sets up certain presumptions and procedures, depending on the nature of taxpayer's business. Insofar as broker-dealers are concerned, 72–18 draws on the analysis of the *Leslie* decision and permits an inference of a prohibited purpose to be drawn from the twin circumstances of buying and selling tax-exempt securities and the existence of indebtedness. Section 5.03 of the procedure provides:

> Where indebtedness is incurred or continued for the general purpose of carrying on a brokerage business which includes the purchase of both taxable and tax-exempt obligations, and the use of the borrowed funds cannot be directly

traced, it is reasonable to infer that the borrowed funds were used for all the activities of the business which include the purchase of tax-exempt obligations. Accordingly, section 265(2) of the Code is applicable in such circumstances. *See Commissioner v. Leslie*, 413 F.2d 636 ([2nd Cir.] 1969), *certiorari denied*, 396 U.S. 1007 [90 S.Ct. 564, 24 L.Ed.2d 500] (1970). However, in such a case only an allocable portion of the interest deduction is disallowed, as provided in section 7.

In applying 72–18 in the present case, the IRS concluded that although there was no direct evidence of intent to purchase tax-exempt securities, there was direct evidence of intent to "carry" with respect to those loans collateralized by tax-exempt securities. After disallowing interest on those loans, the IRS drew an inference under section 5.03 that based on the nature of Dillon's business, a part of the remaining loans was used to purchase tax-exempt securities. It thus applied an allocation formula to the interest claimed on all remaining loans other than those collateralized by tax-exempt securities.

It is the failure of the IRS to exclude from this allocation formula all loans collateralized by *taxable* securities which forms the basis of Dillon's challenge. Dillon's primary argument is that the existence of loans collateralized by taxable securities is direct evidence that those loans were not used to purchase or carry tax-exempt securities. Under Dillon's view, whenever a loan is collateralized, whether by tax-exempt or taxable securities, there would be no need to resort to the inferred presumption of section 5.03.

While plaintiffs here do not quarrel with use of this presumption as to uncollateralized loans,[3] they argue that it is inappropri-

---

**3.** At oral argument counsel for Dillon clarified its position somewhat by asking alternatively for an allocation formula which applies equally to all loans, including those collateralized by tax-exempts. Under Dillon's first alternative, if a loan is collateralized, the interest on it is automatically either non-deductible (tax-exempts) or deductible (taxable securities). Un-

der its second approach, none of the loans are excluded from the general formula allocating deductibility based on the percentage of tax-exempts as a part of all assets. Whether viewed as a challenge to IRS' failure to exclude loans collateralized by taxable securities, or its inclusion of loans collateralized by tax-exempts, Dil-

ate on the one hand for the IRS to treat loans secured by tax-exempt obligations under the direct evidence rule of section 3 of 72–18, and not to treat collateralization by taxable securities in the same fashion, but rather to consider them, along with unsecured loans, under section 5.03.

While Dillon's argument has the appeal of an apparent symmetry of treatment, in fact, the logic behind it breaks down upon closer inspection.

The direct evidence rule with respect to carrying tax-exempt securities can be summarized in this fashion: collateralization of loans by tax-exempt securities is direct proof of an intent to carry tax-exempt securities. A perfectly symmetrical rule with respect to taxable securities would be: collateralization of loans by taxable securities is direct proof of an intent to *carry* taxable securities. The weakness in Dillon's approach is that its evidentiary rule does not go far enough. Its proposed evidentiary presumption does not eliminate the possibility that loans collateralized by taxable securities were used to *purchase* tax-exempt obligations. Unfortunately for Dillon, defendant is in the enviable position of being able to disallow deductions in either of two circumstances: proof (direct or inferential) of an intent to purchase *or* to carry tax-exempt securities. This phenomenon occurs because under section 265(2), a loan can be linked to both taxable and non-taxable securities.[4] The loan could be collateralized by one type of security and the proceeds used to buy another, or vice versa. In either case the deduction is lost. For example, it is enough of a link for purposes of section 265(2) that tax-exempt securities are used as collateral for a loan. *Wisconsin Cheeseman*, 308 F.2d at 422. The fact that a taxpayer could conclusively prove the loan proceeds went to buy taxable securities would not affect the result, since

section 265(2) is written in the alternative. Similarly, if the circumstances are reversed, the fact that loans are collateralized by taxable securities does not speak conclusively to how those loan proceeds are used. If, by direct evidence, or, as potentially is the case here, by inference, the proceeds went in whole or part to purchase tax-exempt securities, the deduction is proportionately lost.

■ Dillon must disprove both elements of the potential disqualification under section 265(2). To be conclusive on summary judgment, the fact that some of the remaining loans were collateralized by taxable securities would have to be dispositive proof, not only that the loans in question were not "carried" by tax-exempt securities, but that the proceeds were not used to purchase the proscribed obligations. The evidence simply cannot sustain the required inference.

*Levitt v. United States*, 517 F.2d 1339 (8th Cir.1975), which Dillon relies on, is not to the contrary. Initially, the court would observe that *Levitt* is distinguishable because it involved individual taxpayers, and not a company in business as a securities broker-dealer. In the course of disallowing the deduction as to loans collateralized by tax-exempt securities, the court does make the following statement, referred to in plaintiffs' brief: "[T]o state the matter conversely, an interest deduction is allowable to the extent that loans were supported by collateral other than tax-exempt bonds." *Id.* at 1346–47.

In that case, however, there was no question where the loan proceeds went. The tax-exempt securities in question were owned prior to the loans, and the limited issue addressed by the court is whether the loans in effect permitted the taxpayer to continue to hold tax-exempt securities in

---

lon is basically asking for identical treatment of the interest on all collateralized loans.

**4.** This circumstance makes plaintiffs' use of 26 U.S.C. § 246A as analogous support inapposite. Dillon argues that "Congress in enacting section 246A, believed that as a general rule collateralization of a loan with property was sufficient

evidence, by itself, to demonstrate a 'direct' relationship between the indebtedness and the property securing the debt." Plaintiffs' Memorandum of Law, p. 24. Even assuming that is correct, it does not preclude a second link, through purchase, with tax-exempt securities.

lieu of selling them to raise money. It was factually appropriate, therefore, for the court to conclude that if loans were not collateralized by tax-exempt securities, then the deduction was proper. In the case of a broker-dealer who continuously buys and sells tax-exempt securities, however, the same factual predicate does not exist.

Plaintiffs also rely on *Phipps v. United States*, 206 Ct.Cl. 583, 515 F.2d 1099 (1975). In the course of construing the complicated arrangement existing among the partners in that case, the court there states that if the taxpayer "had pledged ordinary securities, whose income was taxable, we believe that under Article V he would have been deemed to have received as income the full 5% without reduction." *Id.* at 590, 515 F.2d at 1102. This comment does not, contrary to Dillon's view, support its position. This statement only purports to be a construction of the partnership agreement; it does not go to the legal issue here. The fact that the agreement there attributed income under one circumstance and not another is simply not on point.

Nor is the *Leslie* case susceptible of a construction favorable to plaintiffs. Dillon contends that the court there approved a formula in which loans collateralized by *taxable* securities were excluded before the apportionment formula of section 5.03 was applied. While this observation is correct, it overlooks the fact that the loans in question were used to purchase those same securities. 413 F.2d at 640 n. 5.

### III. Conclusion

On the current state of the record, the court cannot determine that, as a matter of law, plaintiffs are entitled to judgment in their favor. Their motion is therefore denied. The stay of discovery previously entered is lifted. The provisions of Appendix G to the RUSCC will hereafter apply to this case, and the parties are directed to file a Joint Preliminary Status Report on or before March 13, 1987.

It is so ORDERED.

