T.C. Memo. 2001-49

UNITED STATES TAX COURT

HOWARD L. BURRIS, SR. AND BARBARA J. BURRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11776-99.          Filed February 28, 2001.

Howard L. Burris, Sr., pro se.

<u>Michele A. Yates</u> and <u>William J. Gregg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  This case was assigned to Chief Special
Trial Judge Panuthos pursuant to Rules 180, 181, and 183.[1]  The
Court agrees with and adopts the opinion of the Special Trial
Judge, which is set forth below.

_____

[1]    Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, Chief Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes and negligence penalties under section 6662(a) as follows:[2]

| Year | Deficiency | Sec. 6662(a) |
|------|-----------|--------------|
| 1990 | $51,417 | $10,283 |
| 1991 | 50,542 | 10,108 |
| 1993 | 36,903 | 7,381 |

After the notice of deficiency was issued, respondent acknowledged that the deficiencies and penalties were overstated for 1991 and 1993. Respondent asserts the deficiencies and penalties for 1991 and 1993 are as follows:

| Year | Deficiency | Sec. 6662(a) |
|------|-----------|--------------|
| 1991 | $48,307 | $9,661 |
| 1993 | 30,072 | 6,014 |

---

[2] At the time of filing the petition, petitioner requested, and the Court granted, a request for small tax case status pursuant to sec. 7463. The Court notes that the petition reflects for each taxable year an amount in dispute including penalties of less than $50,000. After commencement of trial, it became apparent that for each of the taxable years 1990 and 1991, the deficiencies and penalties placed in dispute exceeded the limit ($50,000) permitted under sec. 7463. Accordingly, the small tax case status was discontinued pursuant to sec. 7463(d) and Rule 173. By order dated Apr. 18, 2000, the caption was amended by deleting the letter "S" from the docket number.

The issues for decision are:[3]  (1) Whether petitioners are
entitled to deduct various business expenses in excess of the
amounts allowed by respondent; (2) whether petitioners failed to
include interest and dividends as income; (3) whether petitioners
may deduct interest payments in excess of the amounts allowed by
respondent; (4) whether petitioners are entitled to an investment
tax credit for 1993; and (5) whether petitioners are liable for
the accuracy-related penalty pursuant to section 6662(a).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.
The stipulated facts and the related exhibits are incorporated
herein by this reference.  At the time of filing the petition in
this case, petitioners resided in Washington, D.C.  Any
references to petitioner are to Howard L. Burris, Sr.

Petitioner received a degree in geology from West Point.
Before 1990, petitioner worked as a consultant to various

---

[3]     Respondent determined that petitioners failed to
include $1 of income in 1993 from Social Security.  Respondent
disallowed deductions of $15,597 from Schedule E, Supplemental
Income and Loss, for 1991. Petitioners did not present evidence
as to these issues.  As a result, petitioner is deemed to have
conceded these issues.  See Rules 142(a), 149(b); Pearson v.
Commissioner, T.C. Memo. 2000-160.

The notices of deficiency contain adjustments to
petitioners' itemized deductions, alternative minimum tax,
employment tax, and dependency exemption deductions.  These are
computational adjustments which will be affected by the outcome
of the other issues to be decided, and we do not separately
address them.

corporations.  During the period at issue, petitioner worked as a consultant to the Federal Reserve.  As a consultant, petitioner acted as an intermediary for the Federal Reserve and secured financing for various projects, such as a high speed train and a hospital.  Petitioner received a percentage of the financing as a fee for his efforts.

Between 1989 and 1994, petitioner attempted to secure $3.5 billion in financing for a Texas high speed train project to connect Houston, Dallas, and Austin.  Petitioner met with various bank and trust representatives in Europe in an effort to finance the train project.

Petitioners engaged in other side businesses between 1990 and 1993.  In the 1940's, petitioner Barbara J. Burris (Mrs. Burris) inherited from her father, B.H. Jester, a plot of land in Austin, Texas.  The land was developed under the names Jester Development and Jester Estate Development (collectively, Jester). Jester planned to build 1,100 houses on 1,000 acres of land. Jester continued construction in 1990 and 1991, but construction ceased at some point in the early 1990's due to the discovery that the golden cheek warbler, an endangered species, inhabited the property.  Petitioners also owned interests in oil and gas holdings during the years at issue.

Petitioners filed joint Federal income tax returns for the years in issue. Petitioners claimed the following expenses as deductions on Schedules C, Profit or Loss From Business:[4]

|                          | 1990     | 1991      | 1993     |
|--------------------------|----------|-----------|----------|
| Depreciation             | $51,222  | $30,703   | $31,203  |
| Legal and professional   | 73,232   | 42,228    | 33,733   |
| Travel                   | 61,601   | 100,601   | 18,638   |
| Entertainment and meals  | 12,636   | 25,693    | 20,294   |

On Schedules A, Itemized Deductions, petitioners claimed deductions as follows:

|                          | 1990     | 1991      | 1993     |
|--------------------------|----------|-----------|----------|
| Home mortgage interest   | $20,180  | $32,741   | $7,497   |
| Investment interest      | 34,265   | [1]40,770 | 30,662   |
| Real estate taxes        | 9,352    | 13,147    | 9,920    |
| Charitable contributions | 8,548    | 4,583     | 3,521    |
| Other expenses           | 13,783   | [2]10,392 | 1,219    |
| Medical and dental       | ---      | ---       | 5,473    |
| Total                    | 86,128   | [3]100,865| 58,292   |

[1] Petitioners reported investment interest of $41,232, but deducted $40,770 due to the limitation of sec. 163(d)(1).

[2] On their amended return, petitioners reported other expenses of $10,658. These amounts will be affected by computational adjustments.

[3] Although $100,865 is the total Schedule A amount reflected on petitioners' 1991 return, the correct total amount is $101,633.

Petitioners also reported investment income of $52,345 in 1990, $40,770 in 1991, and $62,239 in 1993. Petitioners claimed an investment tax credit of $3,151 in 1993.

[4] Petitioners claimed other expenses for each year that are not at issue.

Respondent issued a notice of deficiency on April 1, 1999. The notice[5] (1) disallowed some of the deductions claimed on Schedule C; (2) determined that petitioner failed to report dividend and interest income of $95 in 1990, $5,493 in 1991, and $253 in 1993; and (3) made adjustments to petitioners' itemized deductions on Schedule A.  As to the itemized deductions on Schedule A, the notice of deficiency indicated the following:

> It is determined that <u>interest</u> expense deduction of $76,098.00, $84,638.00 and $67,297.00 respectively for the taxable years ended December 31, 1990, 1991 and 1993 is allowable instead of $86,128.00, $100,865.00 and $58,292.00 respectively as shown on your tax returns for the taxable years ended December 31, 1990, 1991 and 1993.  Accordingly, your taxable income is increased $10,030.00 and $16,227.00 for the taxable years ended December 31, 1990 and 1991, and your taxable income is decreased $9,005.00 for the taxable year ended December 31, 1993.[6]  [Emphasis added.]

Respondent also determined that petitioner was liable for the accuracy-related penalty pursuant to section 6662(a).

Respondent served petitioners with interrogatories and a request for production of documents on January 27, 2000. Petitioners failed to respond to the formal discovery, and respondent filed motions to compel responses to interrogatories

---

[5]     Although the explanation in the notice of deficiency appears to disallow the claimed investment credit, the notice does not contain an adjustment to this item.

[6]     The decrease in income for 1993 is due to a carryforward of disallowed interest under sec. 163(d) from 1991. The carryforward amount will be affected by our holding with respect to 1991 and can be accounted for in the Rule 155 computation.

and production of documents on March 22, 2000. At the hearing on these motions, the Court ordered petitioners to respond to the interrogatories in writing by March 31, 2000, or the answers provided orally in Court at such hearing would be deemed petitioners' answers. The Court also ordered petitioners to produce to respondent by March 31, 2000, all documents petitioners intended to use at the trial. Any documents not produced would not be permitted to be used at trial. Petitioner stated that he contested only the Schedule C deductions for 1990. Petitioners did not provide further written answers to the interrogatories, nor did they produce additional documents.[7]

Respondent argued in a trial memorandum and at trial: (1) Petitioners are not entitled to the various Schedule C deductions because they failed to substantiate the amounts claimed; and (2) as to the interest deductions, respondent reclassified the home mortgage interest as investment interest, and then disallowed part of the interest deduction pursuant to section 265(a)(2). At trial, respondent argued for the first time that part of the

---

[7] Despite the Court's rulings, the parties presented evidence and testified about issues which appear to have been the subject matter of the discovery proceeding. Petitioner and respondent raised the omitted income and interest issues at trial. We deem the issues to have been tried by consent and properly before this Court.

investment interest should be disallowed under section 163(d)(1).[8]

OPINION

A.  General

The record in this case is confused, disorganized, and fraught with inconsistent assertions and theories.  Petitioners' reporting of their activities and subsequent explanation of the activities at trial created a muddle of incomprehensible information.  Respondent's determination and assertions at trial created further confusion.

While the determination and the record in this case have made fact finding difficult, we nevertheless have carefully reviewed this record to analyze the issues and make findings and conclusions.  We shall discuss in detail the inconsistencies as we address each adjustment.

B. Schedule C Expenses

1.  Sections 162(a) and 274(a)

Section 162(a) permits a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  An expense must be directly connected with, or proximately result from, a trade or business

---

[8]     Respondent's agent, before applying the limitation of sec. 163(d)(1), calculated the amount of investment interest deductions as $34,131 in 1990, $27,732 in 1991, and $28,388 in 1993.

of the taxpayer.  See Kornhauser v. United States, 276 U.S. 145, 153 (1928); O'Malley v. Commissioner, 91 T.C. 352, 361 (1988), affd. 972 F.2d 150 (7th Cir. 1992).  Expenses that are personal in nature are generally not allowed as deductions.  See sec. 262(a).  Deductions are a matter of legislative grace, and taxpayers must comply with the specific requirements for any deduction claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A taxpayer is required to maintain records sufficient to establish the amount of his income and deductions.  See sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.  A taxpayer must substantiate his deductions by maintaining sufficient books and records to be entitled to a deduction under section 162(a).

When a taxpayer establishes that he has incurred a deductible expense, but is unable to substantiate the exact amount, we are, in some circumstances, permitted to estimate the deductible amount.  See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  We can estimate the amount of the deductible expense only when the taxpayer provides evidence sufficient to establish a rational basis upon which the estimate can be made. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d) supersedes the general rule of Cohan v. Commissioner, supra, and we cannot estimate the taxpayer's

expenses with respect to certain items.  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).  Section 274(d) imposes strict substantiation requirements for gifts, travel, entertainment, and meal expenses. See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To obtain a deduction for a travel, meal, or entertainment expense, a taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony the amount of the expense, the time and place where it was incurred, the business purpose of the expense and, in the case of entertainment, the business relationship to the taxpayer of each person entertained.  See sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  If a taxpayer is unable to fulfill the requirements of section 274(d), then he is not entitled to the deduction.

2.  Depreciation

Section 167(a) permits a depreciation deduction for the exhaustion, wear and tear of property used in a trade or business.  Petitioner claimed depreciation deductions of $51,222 in 1990, $30,703 in 1991, and $31,203 in 1993. Petitioner failed to demonstrate that the depreciated properties were used in his trade or business.  Further, petitioner did not identify the properties he depreciated.  We are unable to estimate an amount for depreciation deductions because petitioner

failed to provide evidence upon which we can make a rational estimate.  See Vanicek v. Commissioner, supra.  We sustain respondent's determination on this issue.

### 3.  Legal and Professional Fees

Petitioners deducted $73,232 in 1990, $42,228 in 1991, and $33,733 in 1993 for legal fees.  Generally, legal fees may be deductible under section 162(a) if they are connected to a taxpayer's trade or business.  See Guill v. Commissioner, 112 T.C. 325, 328-329 (1999); Davis v. Commissioner, T.C. Memo. 1999-250.

Petitioner generally testified that he incurred more than $32,000 in legal fees in connection with his consulting work for the Federal Reserve Board.  Petitioner did not provide any additional details regarding the legal fees, such as the dates, attorneys retained, and how the legal expenses were incurred in his trade or business.[9]  Petitioner also did not produce documents at trial to establish that he incurred these expenses. We are unable to estimate an amount for legal fees because petitioner failed to provide evidence upon which we can make a rational estimate.  See Vanicek v. Commissioner, supra.  We hold for respondent on this issue.

---

[9]    Petitioner's testimony as to the legal fees was so vague that we do not know the year or years in which petitioner incurred the $32,000.

4.  Travel, Entertainment, and Meals

Petitioners deducted travel expenses of $61,601 in 1990, $100,601 in 1991, and $18,638 in 1993.  Petitioners also deducted entertainment and meal expenses of $12,636 in 1990, $25,693 in 1991, and $20,294 in 1993.  Petitioner generally testified that he traveled to Europe to meet with various representatives of banks and trusts to secure funding for the Texas high speed train project.  He did not provide any other detail regarding his travel, entertainment, and meal expenses.  Petitioners' primary argument is that Price Waterhouse, their tax preparer, would not have listed the deductions unless the deductions were proper, and, therefore, they are entitled to deduct petitioner's travel, entertainment, and meal expenses.

Petitioner did not produce documents to support the claimed deductions for travel, entertainment, and meals.  Petitioner provided several theories as to why the documents were unavailable:  First, petitioner forwarded the documents to support his deductions to Price Waterhouse.  According to petitioner, Price Waterhouse, as part of its document retention policy, destroyed the documents.[10]  Second, petitioner's secretary died in the early 1990's, and, therefore, petitioner

---

[10]    At trial, Michael A. Halpert, a revenue agent for the Internal Revenue Service, testified that Price Waterhouse provided him with credit card statements and a spreadsheet of travel expenses for tax year 1991.

could not locate the documents from his office.  Third, petitioner relocated boxes of documents from his office to his personal residence after his secretary died.  Petitioner claims that his basement was flooded and some of the boxes were destroyed.

Petitioner failed to meet the strict substantiation requirements of section 274(d).  Petitioner did not establish through either documents or testimony the amount of each expense, the time and place where it was incurred, the business purpose of the expense and, in the case of entertainment expenses, the business relationship to the taxpayer of each person entertained. See sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Petitioner's scant testimony that he traveled to Europe to meet with banks and trusts falls short of the rigors of section 274(d).  We sustain respondent's determinations as to these items.

C. Interest and Dividend Income

Respondent determined that petitioners failed to report dividend and interest income of $95 in 1990, $5,493 in 1991, and $253 in 1993.  Petitioners do not dispute that they received the amounts in each year.  Petitioners have not presented any arguments that such income is not subject to tax.

Section 61(a)(4) and (7) defines gross income as including income from any source, including interest and dividends.

Petitioners were required to include the interest and dividends as part of their gross income, and they do not dispute that they received such amounts.  We hold for respondent on this issue.

D.  <u>Interest Deductions (Schedule A)</u>

With respect to the tax years 1990 and 1991, respondent argues that the deduction claimed as home mortgage interest is actually investment interest and that petitioner is not entitled to deduct (1) part of the interest pursuant to section 265(a)(2) and (2) part of the interest pursuant to section 163(d).  In the deficiency notice, respondent provided no such explanation for the disallowance, nor did respondent specify whether the home mortgage interest, investment interest, or a combination of the two was disallowed.  Further, the amounts disallowed in the notice do not coincide with the amounts claimed on the return.  Respondent incorrectly classified the total claimed itemized deductions as "interest expenses".  One cannot tell from review of the notice what was allowed or disallowed.  No further explanation is provided in the notice, nor did respondent provide a breakdown of the items allowed and disallowed.

Rule 142 provides:

> (a) <u>General</u>:  The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent.  As to affirmative defenses, see Rule 39.

It is only in respondent's trial memorandum that respondent raised the reclassification of home mortgage interest to investment interest, and the section 265(a)(2) disallowance, and not until trial did respondent rely on the limitation of investment interest under section 163(d). The notice of deficiency does not reflect any of those theories. Accordingly, such theories are a "new matter". See <u>Achiro v. Commissioner</u>, 77 T.C. 881, 889-891 (1981); <u>Wayne Bolt & Nut Co. v. Commissioner</u>, 93 T.C. 500, 507-508 (1989). Petitioner is required to present different evidence to rebut respondent's new theories. Although it is not clear from the notice, the payment of interest does not appear to be at issue. Rather, to contest respondent's theories, petitioners would be required to present evidence relating to motives of investment and the relationship of petitioners' total investments and respective borrowing. Further, petitioners would be required to establish that their intent in securing the loans was not to purchase or carry tax-exempt securities. See, e.g., <u>Mariorenzi v. Commissioner</u>, T.C. Memo. 1973-141, affd. 490 F.2d 92 (1st Cir. 1974). Therefore, respondent has the burden of proof as to the interest issue. We address each of respondent's theories below.

1. <u>Classification of Interest</u>

In the case of a cash basis taxpayer, section 163(a) allows for a deduction of all interest paid during the taxable year.

Individual taxpayers are not permitted to deduct personal interest.  See sec. 163(h)(1).  Personal interest does not include investment interest or qualified residence interest (QRI).  See sec. 163(h)(2)(B), (D).

QRI can arise from either acquisition indebtedness, home equity indebtedness, or pre-October 13, 1987, indebtedness.  See sec. 163(h)(3)(A), (D).  Acquisition indebtedness is any indebtedness secured by the qualified residence of the taxpayer and is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer.  See sec. 163(h)(3)(B).  The aggregate amount of acquisition indebtedness cannot exceed $1 million for any period.  See sec. 163(h)(3)(B)(ii).  Acquisition indebtedness also includes indebtedness to refinance the qualified residence, so long as the indebtedness satisfies the requirements of section 163(h)(3)(B).

Home equity indebtedness is any indebtedness secured by a qualified residence to the extent the total amount of the indebtedness does not exceed the fair market value of the qualified residence, less the amount of acquisition indebtedness of the qualified residence.  See sec. 163(h)(3)(C)(i).  The aggregate amount of home equity indebtedness is limited to $100,000 for any period.  See sec. 163(h)(3)(C)(ii).

Pre-October 13, 1987, indebtedness is any indebtedness which was incurred on or before October 13, 1987, and which was secured

by a qualified residence on October 13, 1987, and at all times thereafter before the interest is paid or accrued.  See sec. 163(h)(3)(D)(iii)(I).  Pre-October 13, 1987, indebtedness also includes debt that is incurred after October 13, 1987, and is used to refinance the pre-October 13, 1987, debt.  See sec. 163(h)(3)(D)(iii)(II).  Pre-October 13, 1987, indebtedness is treated as acquisition indebtedness, but it is not subject to the $1 million limitation.  See sec. 163(h)(3)(D)(i).  Also, a taxpayer is not limited in how he uses the funds from a pre-October 13, 1987 debt, while he is limited in the use of the funds with acquisition and home equity indebtedness.

A qualified residence is either a taxpayer's primary residence or second residence.  See sec. 163(h)(4)(A)(i); sec. 1.163-10T(p)(3), Temporary Income Tax Regs., 52 Fed. Reg. 48410 (Dec. 22, 1987).

Investment interest is any interest allowable as a deduction which is paid or accrued on indebtedness properly allocable to property held for investment.  See sec. 163(d)(3)(A).  Investment interest does not include QRI.  See sec. 163(d)(3)(B).  A taxpayer may deduct investment interest up to the amount of net investment income.  See sec. 163(d)(1).  QRI is not subject to the investment interest limitation of section 163(d)(3)(B).  See sec. 1.163-10T(b), Temporary Income Tax Regs., 52 Fed. Reg. 48410 (Dec. 22, 1987).

Petitioner deducted home mortgage interest of $20,180 in 1990, $32,741 in 1991, and $7,497 in 1993. Respondent argues that the mortgage interest is investment interest. Petitioner testified that he "placed a mortgage on it [petitioners' residence] to bail out some of these items [other debts]". Respondent did not establish that the indebtedness at issue was not QRI. Further, respondent did not present additional evidence to prove that the indebtedness at issue was not secured by petitioners' qualified residence. There is nothing in this record which would lead us to the conclusion that respondent's characterization of the interest as investment interest is correct.

We are also unable to discern when the debt was incurred. Respondent's agent, Michael A. Halpert, testified that he "reviewed the petitioner statements he received from banks and other lending institutions reflecting the amount of interest he had paid in the respective years". Respondent did not produce any of these documents at trial, and the record is silent as to when petitioners purchased their residence. It is possible that the debt could qualify as pre-October 13, 1987, debt, in which case the use of the funds from the indebtedness is not relevant to our inquiry. Respondent failed to establish that the interest was not QRI. We hold for petitioners on this issue.

2.  Section 265(a)(2)

Respondent disallowed part of the investment interest pursuant to section 265(a)(2).  Section 265(a)(2) provides that a taxpayer is not entitled to a deduction for interest on indebtedness incurred or continued to purchase or carry obligations on which the interest is tax exempt.  The purpose of section 265(a)(2) is to prevent a taxpayer from obtaining a double tax benefit by deducting interest on borrowed funds used by the taxpayer to purchase or carry securities bearing tax-exempt interest.  See Denman v. Slayton, 282 U.S. 514, 515 (1931); Levitt v. United States, 517 F.2d 1339, 1343 (8th Cir. 1975); Jacobson v. Commissioner, 28 T.C. 579 (1957); Estate of Norris v. Commissioner, T.C. Memo. 1981-368.

The mere fact that a taxpayer carries or purchases securities concurrently with his increase in indebtedness is insufficient to apply section 265(a)(2).  See Levitt v. United States, supra at 1344; Mariorenzi v. Commissioner, 490 F.2d 92, 93 (1st Cir. 1974), affg. T.C. Memo. 1973-141.  In interpreting section 265(a)(2), the courts require a "sufficiently direct relationship" between the carrying or purchasing of tax-exempt securities and the indebtedness.  Wisconsin Cheeseman, Inc. v. United States, 388 F.2d 420, 422 (7th Cir. 1968); Swenson Land & Cattle Co. v. Commissioner, 64 T.C. 686, 696 (1975).  "Here we are not applying a mechanical rule but are insisting upon a

connection between the tax-exempt securities and the loans before interest deductibility is disallowed." Wisconsin Cheeseman, Inc. v. United States, supra at 423. If the tax-exempt securities are used for collateral for the indebtedness or the proceeds of the borrowing are directly traceable to the purchase of tax-exempt securities, then section 265(a)(2) will apply. See Levitt v. Commissioner, supra at 1345; Wisconsin Cheeseman, Inc. v. United States, supra at 422; Kirchner, Moore & Co. v. Commissioner, 54 T.C. 940 (1970), affd. 448 F.2d 1281 (10th Cir. 1971); Bishop v. Commissioner, 41 T.C. 154 (1963), affd. 342 F.2d 757 (6th Cir. 1965). If neither factual setting exists, then we must examine the facts of each case to determine whether a sufficiently direct relationship exists between the indebtedness and tax-exempt securities. See Estate of Norris v. Commissioner, supra.

Respondent's agent, Mr. Halpert, testified why he applied section 265(a):

> When I first inspected the return prior to even contacting the petitioner, I noticed that there was a large amount of investment interest expense claimed on Schedule A as well as a substantial amount of tax exempt interest income reported on the front page of the 1040. This in itself leads to at least asking questions, leading up to section 265(a).

Respondent did not provide any additional evidence to establish a direct relationship between the indebtedness and the tax-exempt interest. The record does not establish when the debt was incurred, nor does it reflect a connection of the indebtedness

and tax-exempt interest beyond the mere fact that petitioners reported tax-exempt interest while claiming deductions for interest.

We also have credible testimony from petitioner that petitioners' only source of tax-exempt interest was from Mrs. Burris' inheritance. The record does not indicate that petitioners used tax-exempt securities as collateral for the indebtedness at issue, nor that petitioners incurred indebtedness to purchase tax-exempt securities. Respondent improperly applied section 265(a)(2), and we hold for petitioners on this issue.

### 3. Section 163(d)

Respondent argued at trial that part of the investment interest deductions should be disallowed under section 163(d)(1). Section 163(d)(1) provides that a deduction of investment interest may not exceed net investment income. Net investment income is defined as the excess of investment income over investment expenses. See sec. 163(d)(4)(A). Investment income includes gross income from property held for investment and any net gain from the disposition of property held for investment. See sec. 163(d)(4)(B). Property held for investment includes property which produces income of a type described in section 469(e)(1). See sec. 163(d)(5)(A). Section 469(e)(1) property includes gross income from interest, dividends, annuities, and

royalties not derived in the ordinary course of a trade or business.

Petitioners reported investment income of $52,345 in 1990, $40,770 in 1991, and $62,239 in 1993. We held above that petitioners underreported interest and dividends of $95 in 1990, $5,493 in 1991, and $253 in 1993. The omitted amounts constitute investment income, and the actual amounts of investment income reportable by petitioners are $52,440 for 1990, $46,263 in 1991, and $62,492 in 1993. Petitioners claimed investment interest expenses of $34,265 in 1990, $41,232 in 1991, and $30,662 in 1993. For all of the years at issue, the net investment income exceeds the claimed investment interest expenses. Therefore, petitioners may deduct investment interest expenses of $34,265 in 1990, $41,232 in 1991, and $30,662 in 1993.

E.   Investment Tax Credit

Petitioners claimed an investment tax credit of $3,151 in 1993. Sections 38 and 46 provide for the allowance of a business credit, which in part is comprised of the investment credit. See sec. 38(a). The investment tax credit is the sum of the rehabilitation credit, energy credit, and reforestation credit. See sec. 46.

Although respondent argues that petitioners are not entitled to an investment tax credit of $3,215 for 1993, respondent's notice of deficiency does not contain an adjustment to income tax

to reflect the disallowed credit.[11]  Since respondent seeks to increase the amount of deficiency, respondent has the burden of proof to establish that petitioners are not entitled to the investment tax credit.  See Rule 142.  Respondent failed to present evidence at trial as to this issue and is deemed to have conceded the issue.  See Rules 142(a), 149(b); Pearson v. Commissioner, T.C. Memo. 2000-160.

F.  Accuracy-Related Penalty

Respondent determined petitioners are liable for the accuracy-related penalty under section 6662(a) for 1990, 1991, and 1993.  The accuracy-related penalty is equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules or regulations.  See sec. 6662(a) and (b)(1). "Negligence" consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and also includes any failure to keep adequate books and records or to substantiate items properly.  See sec. 6662(c); 1.6662-3(b)(1), Income Tax Regs.  "Disregard" consists of any careless, reckless, or intentional disregard.  See sec. 6662(c).

An exception applies to the accuracy-related penalty when the taxpayer demonstrates (1) there was reasonable cause for the

---

[11]    We note that respondent's calculation appears to be incorrect, as petitioners claimed a credit of $3,151 on their 1993 Federal income tax return.

underpayment, and (2) he acted in good faith with respect to such underpayment. See sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and circumstances. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. See Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs. Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer." See Neely v. Commissioner, 85 T.C. 934 (1985).

It is the taxpayer's responsibility to establish that he is not liable for the accuracy-related penalty imposed by section 6662(a). See Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989).

Petitioners appear to argue that they relied on their tax preparer, Price Waterhouse. Under certain circumstances, reliance by a taxpayer on the advice of a competent adviser can be a defense to the accuracy-related penalty. See United States v. Boyle, 469 U.S. 241, 250-251 (1985); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). However, reliance on professional advice, standing alone, is not an absolute defense to negligence

but rather a factor to be considered.  See <u>Freytag v. Commissioner</u>, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  It must be established that the reliance was reasonable, in good faith, and based upon full disclosure.  See <u>Ewing v. Commissioner</u>, <u>supra</u>; <u>Pritchett v. Commissioner</u>, 63 T.C. 149, 174-175 (1974).

Petitioners failed to establish that they reasonably relied in good faith upon Price Waterhouse's advice.  Further, petitioners did not prove that they fully disclosed the facts of the expenses at issue.  Petitioner repeatedly testified that Price Waterhouse would not have reported the various expenses on Schedules A and C unless petitioners were entitled to deduct them.  Petitioner's testimony is insufficient to establish a defense to the accuracy-related penalty.

Petitioners claimed deductions that they failed to explain or substantiate.  On the basis of the entire record, we conclude petitioners have not established that any portion of the underpayment was due to reasonable cause or that they acted in good faith.  Accordingly, we hold petitioners are liable for the accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
